UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FOREST GILLIAM,                          :
                                         :
            Plaintiff,                   :      CIVIL NO. 1:CV-07-0359
                                         :
      v.                                 :      (Judge Caputo)
                                         :
RONALD HOLT, *et al.*,                    :
                                         :
            Defendants.                  :

**MEMORANDUM**

Plaintiff Forest Gilliam ("Plaintiff" or "Gilliam") commenced this *Bivens*[1] action

against prison officials from the Schuylkill Federal Correctional Institution ("FCI-Schuylkill")

in Minersville, Pennsylvania shortly before he was released from that facility upon the

completion of his sentence.[2]  Gilliam alleges that Defendants abused their authority,

discriminated against him, and denied him due process under the Fifth Amendment when

they placed false information in his progress report indicating that he was "litigious," which

resulted in the denial of his halfway house placement.  (Doc. 1 at 4-5, 7-8).  He further

alleges that Defendants' redaction of the false statements is proof that they committed

---

1.    *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S.
388 (1971).  *Bivens* stands for the proposition that "a citizen suffering a compensable injury
to a constitutionally protected interest could invoke the general federal-question jurisdiction
of the district courts to obtain an award of monetary damages against the responsible
federal official."  *Butz v. Economou*, 438 U.S. 478, 504 (1978).
        *Bivens* actions are the federal counterpart to § 1983 claims brought against state
officials.  *Evervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip
Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the
principles developed in the case law applying section 1983 to establish the outer
perimeters of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402,
1409 (3d Cir. 1991).

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

fraud and falsified documents.  (*Id.* at 8-9.)  Further, Plaintiff alleges that Defendant Whalen referred to Gilliam as "litigious" in retaliation against him for exercising his right to free speech pursuant to the First Amendment in filing previous lawsuits, including one against Whalen's friend and co-worker, Disciplinary Hearing Officer Kevin Bittenbender. (*Id.* at 6-8.)

Before the Court is Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment.  (Doc. 11.)  Also before the Court is Defendants' Motion for Judicial Notice.  (Doc. 12.)  For the reasons set forth below, the motions will be granted.

## BACKGROUND

In his Complaint, Gilliam names the following six employees of the Bureau of Prisons ("BOP") in their individual and official capacities: 1) Ronald Holt, FCI-Schuylkill Warden; 2) D. Scott Dodrill, Regional Director; 3) Harrell Watts, Administrator of National Inmate Appeals; 4) Harley Lappin, Director; 5) Linda Edwards, FCI-Schuylkill Unit Manager; 6) Walter Whalen, FCI-Schuylkill Case Manager.  (Doc. 1 at 2.)

Defendants have submitted a Statement of Material Facts (Doc. 15), supported by Declarations of Defendant Edwards and BOP Attorney-Advisor, John E. Wallace.  Attached to the Declarations are supporting documentation regarding Defendants' attempts to place Gilliam in a halfway house; records summarizing Gilliam's disciplinary record and administrative remedies filed during his incarceration; and copies of the administrative remedies and responses pertinent to this case.  These submissions reveal the following facts.

Gilliam arrived at FCI-Schuylkill on January 31, 2005 and remained there until his release from BOP custody on February 26, 2007.  (Doc. 15 ¶ 1.)

On July 20, 2006, FCI-Schuylkill staff forwarded an "Institutional Referral for Community Correction Center ("CCC")[3] Placement" packet, to Kenneth Johnson, Community Corrections Manager ("CCM") in Cincinnati, Ohio.  (*Id.* ¶ 2.)  The packet contained a referral form, current progress report[4], community based program agreement, Supervision Release Plan, and Judgment and Commitment Order.  (*Id.* ¶ 3.)  The unit team recommended that Gilliam be placed in a halfway house in the Northern District of Ohio for the last six months of his sentence.  (*Id.* ¶ 4.)

The CCM reviewed the packet and sent it to the relevant Northeast Ohio halfway houses for consideration.  (*Id.* ¶ 5.)  On August 31, 2006, the Oriana House, Incorporated, a halfway house in Akron Ohio, erroneously sent a receipt form to Gilliam indicating that he was accepted for placement and that he would arrive there on September 29, 2006.  (*Id.* ¶ 6.)  On September 6, 2006, Gilliam signed the receipt form and presented it to prison staff to be mailed back to the Oriana House.  (*Id.* ¶ 7.)  However, on September 7, 2006, Gilliam's case manager contacted the CCM to inquire why the halfway house acceptance date was not reflected on BOP's SENTRY computer system.  (*Id.* ¶ 8.)  The CCM informed

---

3.   The Third Circuit Court of Appeals has accepted the BOP's understanding that CCCs, Residential Reentry Centers ("RRCs"), and halfway houses are indistinguishable. *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 240 n.4 (3d Cir. 2005).  The Court will use the term "halfway house" throughout the Memorandum for consistency.

4.   The progress report, dated July 14, 2006, contained a notation that Gilliam's institutional adjustment was poor and that he was litigious.

3

Gilliam's case manager that the Oriana House Rules and Regulations were sent to Gilliam in error.  (*Id.* ¶ 9.)  Gilliam's admission to the Oriana House programs in Cleveland and Akron had been denied on September 1, 2006 because of his "poor institutional adjustment."  (*Id.* ¶ 10; Doc. 14-5 at 20, September 1, 2006 correspondence from Oriana House intake specialist to Johnson.)  Gilliam also had been denied admission by the Community Corrections Association ("CCA") in Youngstown, Ohio on August 31, 2006 because there were no beds available.  (Doc. 15 ¶ 11; Doc. 14-5 at 22, August 31, 2006 correspondence from unit specialist at CCA to Johnson.)

Thereafter, Defendant Edwards contacted the CCM to attempt to secure a halfway house placement for Plaintiff.  (Doc. 15 ¶ 12.)  Defendant Edwards was advised that halfway houses in Cleveland and Akron had denied Plaintiff's placement two times and that a halfway house in Youngstown had denied his placement three times.  (*Id.* ¶ 13; Doc. 14-5 at 24.)  Defendant Edwards then requested that Plaintiff be placed in a Comprehensive Sanction Center ("CSC"), but was advised that Plaintiff already had been denied placement twice by the only CSC available, which is located in Cleveland.  (Doc. 15 ¶¶ 14-15; Doc. 14-5 at 24.)  Gilliam did not receive halfway house placement prior to his release from BOP custody on February 26, 2007.  (Doc. 15 ¶¶ 16-17.)

Plaintiff filed his Complaint on February 26, 2007.  Service of the Complaint was directed by Order dated March 2, 2007.  (Doc. 6.)  The Court granted Defendants' motion for an extension of time to file an Answer to the Complaint (Doc. 10), and on July 13, 2007, Defendants filed the instant Motion to Dismiss, or in the alternative, for Summary Judgment

4

Case 3:07-cv-00359-ARC-SF Document 21 Filed 03/31/08 Page 5 of 21

(Doc. 11.) Defendants filed a supporting brief (Doc. 14) and Statement of Material Facts (Doc. 15).

Because Plaintiff did not file a brief in opposition to Defendants' Motion, on November 8, 2007, the Court directed him to file his opposition within fifteen days or else the Court would deem the Motion unopposed. (Doc. 16.) Plaintiff was specifically directed to file his opposition in accordance with M.D. Pa. L.R. 56.1. (*Id.* at 2.) On November 27, 2007, Plaintiff filed his brief in opposition to the Motion. (Doc. 17.) However, he did not file a Statement of Material Facts. Therefore, on December 4, 2007, the Court directed Plaintiff to file his Statement on or before December 18, 2007. (Doc. 18.) Plaintiff timely filed his Statement. (Doc. 20.) Defendants filed their Reply Brief on December 10, 2007. (Doc. 19.) Thus, the Motion is ripe for disposition.

Defendants also have filed a Motion for Judicial Notice (Doc. 12) and supporting brief (Doc. 13) requesting that the Court take judicial notice of Plaintiff's other, related proceeding before this Court, *Forest Gilliam v. Holt*, No. 3:CV-06-2127, pursuant to Fed. R. Evid. 201(b). The Court will dispose of this Motion before proceeding to an analysis of Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment.

**MOTION FOR JUDICIAL NOTICE**

Federal Rule of Evidence 201(b) provides that, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Judicial notice is mandatory

5

only where a party requests that it be taken and supplies the necessary information.  Fed.

R. Evid. 201(d).  A court is entitled to take judicial notice of the record in a prior, related

proceeding.  *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3

(3d Cir. 1988) (citations omitted); *cf. Freshman v. Atkins*, 269 U.S. 121, 124 (1925) (while a

court is not bound to seek the records of other courts and give effect to their judgments,

this is not to say that a court may not take judicial notice "of, and give effect to, its own

records in another [ ] . . . interrelated, proceeding . . .").

    In the instant case, Defendants request that the Court take judicial notice pursuant to

Fed. R. Evid. 201(b) of Plaintiff's other, related proceeding before this Court, *Forest Gilliam

v. Holt*, No. 3:CV-06-2127.  (*See* Doc. 12.)  Gilliam commenced that action by filing a *pro

se* petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241.  In his

Petition, Gilliam raised the following grounds: 1) he was denied halfway house placement

for the last six months of his sentence in violation of the rule set forth in *Woodall v. Federal

Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir. 2005); 2) he was entitled to immediate

release to a halfway house; 3) he would have been accepted at Oriana House,

Incorporated, a halfway house in Akron, Ohio, if members of his unit team at FCI-Schuylkill

had not placed propaganda in his "referral packet and/or his Progress Report"; 4) FCI-

Schuylkill staff were motivated by "deceit, vindictiveness, abuse of authority, and

discrimination . . . "; 5) he was denied halfway house placement "for propaganda such as

poor institutional adjustment, argumentative towards staff members, and for being very

litigious [ ]"; and 6) he was being punished for his success in litigation rather than for any

*bona fide* instances of poor institutional adjustment.  *See* 3:CV-06-2127, Docs. 1, 2.  On

February 20, 2007, this Court dismissed Gilliam's Petition for failure to exhaust his administrative remedies.  *See id.*, Doc. 24.

Because Defendants have requested that the Court take judicial notice and have supplied the necessary information, and the Court is entitled to take judicial notice of prior related proceedings, the Court will grant Defendants' Motion and take judicial notice of *Forest Gilliam v. Holt*, No. 3:CV-06-2127.  Fed. R. Evid. 201(b), (d); *see Oneida*, 848 F.2d at 416 n.3.

The Court now will turn to an analysis of Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.

## LEGAL STANDARDS

### I.  Motion to Dismiss

Defendants seek dismissal of Gilliam's Complaint on the basis that it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Defendants seek summary judgment and have submitted evidentiary documents outside the pleadings in support of their motion.  Federal Rule of Civil Procedure 12(d) provides:

> **(d) Result of Presenting Matters Outside the Pleadings.**  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  The Court will not exclude the evidentiary materials accompanying Defendants' motion because Gilliam also has been given a reasonable opportunity to

present material relevant to the Motion.  (*See* Doc. 16) (November 8, 2007 Order advising Plaintiff that, because Defendants styled their Motion as a "Motion to Dismiss, or in the alternative, for Summary Judgment," Plaintiff must oppose the Motion as required by M. D. Pa. L. R. 56.1.)  Accordingly, the Court will treat Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, solely as seeking summary judgment.

## II.  Summary Judgment

Summary judgment will be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  In considering a summary judgment motion, inferences from the underlying facts must be viewed in the light most favorable to the non-moving party.  *P.N. v. Clementon Bd. Of Educ.,* 442 F.3d 848, 852 (3d Cir. 2006).

The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor.  *Anderson*, 477 U.S. at 256-57.  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Accordingly, the non-moving party "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the evidence in favor of the nonmoving party is "merely colorable or not significantly probative," summary judgment should be granted. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994) (abrogated on other grounds)).

## DISCUSSION

Defendants seek entry of summary judgment on several grounds, three of which are dispositive. They argue that Gilliam failed to exhaust administrative remedies with respect to his claim that Defendant Whalen referred to him as a "litigious inmate" for retaliatory reasons, and therefore, summary judgment for Defendants should be granted on this

claim.  Defendants Lappin, Dodrill and Watts argue that Gilliam has not demonstrated that they were personally involved in the alleged unconstitutional conduct, and thus they should be dismissed as parties to this action.  Finally, Defendants Holt, Edwards and Whalen argue that they are entitled to qualified immunity, and thus summary judgment should be entered in their favor.  The Court agrees with these arguments for the reasons set forth below.


## I. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996) requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

A prisoner is required to exhaust administrative remedies as to any claim that arises in the prison setting regardless of any limitations on the type of relief that may be gained through the grievance process.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "'[I]t is beyond the power of this court- or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy, or any other basis.'"  *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998).  The

PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."
*Id.* at 71.  The PLRA also mandates that an inmate "properly" exhaust administrative
remedies before filing suit in federal court.  *Woodford v. Ngo*, 126 S. Ct. 2378, 2387
(2006).  "Proper exhaustion demands compliance with an agency's deadlines and other
critical procedural rules because no adjudicative system can function effectively without
imposing some orderly structure on the course of its proceedings."  *Id.*  at 2386.  "The
PLRA attempts to eliminate unwarranted federal-court interference with the administration
of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address
complaints internally before allowing the initiation of a federal case.'"  *Id.* at 2387 (quoting
*Nussle*, 534 U.S. at 525)).  Failure to substantially comply with procedural requirements of
the applicable prison's grievance system will result in a procedural default of the claim.
*Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted
administrative remedies.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to
exhaust available administrative remedies is an affirmative defense.  *Id.* at 295 n.8.
Therefore, it must be pleaded and proven by the defendants.  *Brown v. Croak*, 312 F.3d
109, 111 (3d Cir. 2002).

An inmate may challenge any aspect of his or her confinement using the BOP's
administrative remedy procedure, which is set forth at 28 C.F.R. 542.10 *et seq.*  First, an
inmate must informally present his complaint to staff, and staff shall attempt to informally
resolve any issue before an inmate files a request for administrative relief.  28 C.F.R. §
542.13(a).  If unsuccessful at informal resolution, the inmate may submit his complaint in

the form of a request for administrative remedy to the warden of the institution where he is confined. *Id.* at § 542.14(a). If an inmate is dissatisfied with the warden's response, he may appeal using Form BP-10 to the Regional Office of the BOP. *Id.* at 542.15(a). If an inmate is dissatisfied with the response of the Regional Office, he may appeal using Form BP-11 to General Counsel at the Central Office of the BOP. *Id.* No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.

Preliminarily, the Court notes that Gilliam was incarcerated at the time he filed his Complaint, and thus he was required to comply with the exhaustion requirement. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3d Cir. 2002). While it is true that the Complaint was filed with the Court on February 26, 2007, the day Gilliam was released from BOP custody, Gilliam signed and dated the Complaint and placed it in the mail on February 22, 2007 while still incarcerated. The date on which Gilliam delivered his Complaint to prison authorities for mailing is the date that controls. *See Houston v. Lack*, 487 U.S. 266, 275 (1988) (applying the "mailbox rule" and accepting the date that the prisoner delivers his legal filing to prison authorities for mailing as the date of court filing); *see also* Fed. R. App. P. 4(c)(1) (providing notice of appeal filed by inmate timely if deposited in institution's internal mail system on or before the last day for filing).

Moreover, in *Forest Gilliam v. Holt*, No. 3:CV-06-2127, the case that this Court has taken judicial notice of, Gilliam conceded that he had not exhausted his administrative remedies with respect to his challenge to the denial of his halfway house placement and failed to cite any authority that would justify relief from the exhaustion requirement. (*See*

Doc. 14-6 at 41, February 20, 2007 Memorandum and Order in *Gilliam v. Holt*, No. 3:CV-06-2127 at Doc. 24.)  In that case, Defendants submitted Gilliam's records showing that he had submitted a grievance challenging the denial of his halfway house placement on November 1, 2006, just one day after filing his petition for writ of habeas corpus.  (*See Gilliam v. Holt*, No. 3:CV-06-2127, Doc. 15-2 at 4-5, 29-31.)  When Defendant Holt denied the grievance, Gilliam filed an appeal to the Regional Director and had not yet received a response.  (*Id.* at 27-31.)

In the instant case, Defendants have submitted evidence demonstrating that Gilliam has exhausted two out of the three issues he presents in this action.  The evidence consists of an administrative remedy history showing that Gilliam filed 37 administrative remedies while incarcerated with the BOP (Doc. 14-5 at 25-26; 35-54) and copies of the grievances Gilliam filed that relate to this action (Doc. 14-6 at 26-40).  The evidence demonstrates that Gilliam has exhausted on the issue of his halfway house placement (Doc. 14-6 at 26-33), which was the issue that he had not yet exhausted at the time he filed his petition at 3:CV-06-2127, and on the issue that staff abused their authority and discriminated against him.  (*Id.* at 34-40).

However, the evidence submitted by Defendants reflects that Gilliam never filed an administrative remedy raising a claim that Defendant Whalen referred to him as "a litigious inmate" for retaliatory reasons, thus violating his First Amendment right to free speech. (Doc. 14-5 at 35-56; Doc. 14-6 at 26-40.)  In opposing their Motion, Gilliam alleges that "the record reflect[s] that he has filed and completed 'all' the necessary administrative remedies and will/have produced them for the Court."  (*See* Doc. 17 at 4.)  However, Gilliam did not

13

submit any evidence to support his assertion.  Therefore, the record clearly reflects that Gilliam has failed to exhaust his administrative remedies with respect to his claim that Defendant Whalen referred to him as a "litigious inmate" for retaliatory reasons thus violating his First Amendment right to free speech, and summary judgment for Defendants will be granted on this claim.

## II.    Lack of Personal Involvement

Defendants Dodrill, Watts, and Lappin assert that they are entitled to dismissal from this action because Gilliam has failed to demonstrate that they were personally involved in the alleged deprivation.  Plaintiff did not oppose this argument in his opposition brief.  (*See* Doc. 17.)

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct.  *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986) (quoting *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)).  The supervisor must be personally involved in the alleged misconduct.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207).

In the instant case, Gilliam's sole allegation against Defendant Lappin is that he supervises all BOP employees.  (Doc. 1 at 9, ¶ 49.)  His sole allegation against  Defendant Watts is that he is in charge of all inmate BP-11 complaints and responses.  (*Id.,* ¶ 46.)  Plaintiff does not make any specific allegations against Defendant Dodrill in his Complaint.

However, in his "Relief" section, he requests compensatory damages against Defendants Dodrill, along with Defendants Holt, Watts, and Lappin, for their "failure to properly investigate a complaint before denying it and/or for attempting to use an extension of time on a response due to deter plaintiff from successfully filing t[his] [*sic*] complaint."  (*Id.* at 10, ¶ D 1.)  However, Plaintiff fails to make any allegations in his Complaint that Defendants Lappin, Watts, and Dodrill failed to properly investigate his complaint or that they allowed for an extension of time to deter plaintiff from filing the complaint that he did in fact file.  As such, there are no allegations to support this request for relief.

Instead, it appears that Plaintiff seeks to hold Defendants Lappin, Watts, and Dodrill responsible solely because of their supervisory roles in prison administration.  However, *respondeat superior* cannot form the basis of a *Bivens* claim.  *See Balter v. United States*, 172 Fed. Appx. 401, 403 (3d Cir. 2006); *Richards v. Pennsylvania*, 196 Fed. Appx. 82, 85 (3d Cir. 2006); *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000) (citing cases holding that *respondeat superior* is not a viable theory of *Bivens* liability)).  Moreover, to the extent Plaintiff seeks to hold Defendants Lappin, Watts, and Dodrill liable because of their involvement in the administrative grievance process, it is well-settled that the filing of a grievance is not sufficient to show the actual knowledge necessary to establish personal involvement.  *Rode* 845 F.2d at 1208; *Ramos v. Pennsylvania Dept. Of Corrections*, 2006 WL 2129148, *2 (M.D. Pa. July 27, 2006) (McClure, J.) (holding that the review and denial of grievances and subsequent administrative appeal does not establish personal involvement).  Accordingly, the Court will dismiss Defendants Lappin, Watts, and Dodrill from this action.

15

**III. Qualified Immunity**

The remaining Defendants, Holt, Edwards, and Whalen, assert that summary judgment should be entered in their favor because they are entitled to qualified immunity. As in suits under § 1983, if *Bivens* defendants show that they are entitled to the affirmative defense of qualified immunity, they will be granted summary judgment.  *Butz*, 438 U.S. at 499.  Qualified immunity is immunity from suit rather than a mere defense to liability, which is effectively lost if a case is erroneously permitted to go to trial, and therefore questions of immunity should be resolved at the earliest possible stage in litigation.  *Scott v. Harris*, – U.S. –, 127 S. Ct. 1769, 1774 n.2 (2007) (citations omitted).  Courts required to rule upon the qualified immunity issue must consider this threshold question:

> 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'  If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'

*Id.* at 1774 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Saucier,* 533 U.S. at 201.  To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry

16

in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

When the defense of qualified immunity is raised at the summary judgment stage, the Court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. *See Gruenke v. Seip*, 225 F.3d 290, 299-300 (3d Cir. 2000); *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 839-42 (E.D. Pa. 2000); *see also Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in the light most favorable to the plaintiff).").

The Court will examine Gilliam's claim in accordance with the above framework to determine whether Defendants are entitled to qualified immunity and whether summary judgment should be entered in their favor.

The question of Defendants' qualified immunity is resolved upon answering the threshold inquiry as to whether Defendants' conduct violated a constitutional right. Because Gilliam failed to exhaust his retaliation claim, his only remaining claim is that his right to due process under the Fifth Amendment was violated when false information was placed in his July 14, 2006 progress report without a hearing and he was denied halfway house placement as punishment.[5]  (Doc. 1 at 1, 5-6.)  The threshold question presented by

---

5.   Defendants characterize Gilliam's claim as an Eighth Amendment deliberate indifference claim.  (*See* Doc. 14 at 16.)  A prison official's "deliberate indifference" to a

Gilliam's due process claim is whether a constitutionally protected liberty interest is implicated by the denial of halfway house placement.  A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule or regulation.  Where it is argued that a statute creates a liberty interest, the question is whether it places "substantive limitations on official discretion."  *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Accordingly, a protected liberty interest has been found where a statute contains "explicitly mandatory language."  *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463 (1989).

In the instant case, the question is whether the language of 18 U.S.C. § 3624(c) is explicitly mandatory such that it creates a liberty interest.  Section 3624(c) provides in pertinent part as follows:

> **(c) Pre-release custody. - -** The Bureau of Prisons *shall, to the extent practicable,* assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. . . .

18 U.S.C. § 3624(c) (emphasis added).  The question as to whether Section 3624(c) creates a liberty interest was before a Member of this Court in *Gambino v. Gerlinski*, 96 F. Supp. 2d 456 (M.D. Pa. 2000) (Muir, J.).  In *Gambino*, the Court was asked to determine whether the failure to transfer the petitioner to a halfway house for some period within the

---

substantial risk of serious harm to an inmate violates the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted).  Gilliam is not claiming that prison officials were deliberately indifferent to a risk of serious harm, but rather that his right to due process was violated when false information was placed in his progress report without a hearing and he was punished by having his halfway house placement denied.

last 10% of his sentence violated both 18 U.S.C. § 3624(c) and his Fifth Amendment due

process rights such that he was entitled to relief under 28 U.S.C. § 2241.  *Gambino*, 96 F.

Supp. 2d at 457-58.  The Court answered the question in the negative based upon its

determination that 18 U.S.C. § 3624(c) does not create a liberty interest in halfway house

placement, and thus there could be no violation of the petitioner's right to due process.  *Id.*

at 459-60.  In reasoning to this conclusion, the Court engaged in a review of decisions in

other circuits and noted that they all reached the same conclusion.  *Id.* at 456-60.  One of

these decisions was *Prows v. Federal Bureau of Prisons*, 981 F.2d 466 (10th Cir. 1992),

*cert. denied*, 510 U.S. 830 (1993), in which the Tenth Circuit Court of Appeals reasoned

and concluded as follows:

> [w]hile there is mandatory (albeit qualified) language employed in the statute,
> it relates only to the general direction to facilitate the prisoner's post-release
> adjustment through establishment of some unspecified pre-release
> conditions.  Nothing in § 3624(c) indicates any intention to encroach upon the
> Bureau's authority to decide *where* the prisoner may be confined during the
> pre-release period.

*Gambino*, 96 F. Supp. 2d at 459 (quoting *Prows*, 981 F.2d at 469 (emphasis added)

(citations omitted)).

The *Gambino* Court agreed with the conclusion unanimously reached by other courts

that § 3624(c) does not create a liberty interest because it "'refers to no [mandatory]

procedures.  It is instead a broadly worded statute setting forth a general policy to guide

the prison system.'" *Id.* at 459-60 (quoting *Badea v. Cox*, 931 F.2d 573, 576 (9th Cir.

1991)).  Applying the rationale of *Gambino* in the instant case, if a liberty interest is not

implicated by the denial of Gilliam's halfway house placement, then there can be no

violation of his constitutional rights.  Moreover, if there is no violation of a constitutional right, then there is no necessity for further inquiries concerning qualified immunity.  *See Saucier*, 533 U.S. at 201.  he does not have a viable claim that his right to due process was violated.  Because Defendants Holt, Edwards, and Whalen are entitled to qualified immunity, summary judgment will be entered in their favor.[6]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judicial Notice will be granted. Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment will be granted, and judgment will entered in favor of Defendants.

An appropriate Order follows.

March 31, 2008                                        s/ A. Richard Caputo
                                                     A. RICHARD CAPUTO
                                                     United States District Judge

---

6.    Gilliam also has sued each Defendant in their individual capacities.  However, because it has been established that no constitutional right has been violated, there is no basis for individual liability.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FOREST GILLIAM, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 1:CV-07-0359 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| RONALD HOLT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### ORDER

**AND NOW, this 31st day of March, 2008,** for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.      Defendants' Motion for Judicial Notice (Doc. 12) is **GRANTED**.

2.      Defendants' Motion to Dismiss, or in the alternative, for Summary

   Judgment (Doc. 11) is **GRANTED**.

3.      The Clerk of Court shall **ENTER** judgment in favor of the Defendants and

   against the Plaintiff.

4.      The Clerk of Court is directed to mark this case **CLOSED**.


                                        s/ A. Richard Caputo
                                        A. RICHARD CAPUTO
                                        United States District Judge